UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KACEY VALLI, | No. 2:11-cv-03413 GEB AC |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| R. GROUNDS, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The action proceeds on the petition filed November 11, 2011, ECF No. 1, which challenges petitioner's 2007 conviction for two counts of evading arrest. Respondent has answered, ECF No. 16, and petitioner has filed a traverse, ECF No. 20.

BACKGROUND

In January of 2007, petitioner was tried on charges of murder, attempted murder, and being a felon in possession of a firearm. To prove consciousness of guilt, the prosecution presented evidence that petitioner drove recklessly in fleeing the police on two occasions shortly after the homicide, when he knew that he was a suspect. Petitioner had not, prior to his murder trial, been charged with evading arrest on the basis of those incidents. Petitioner was acquitted of the murder and related counts. Minutes after the jury returned its verdict, petitioner was arrested on evading charges. Because petitioner claims here that the evading charges were foreclosed by

1

the murder acquittal, the relevant evidence from both trials is summarized below.

### Evidence Of Flight Presented At The Murder Trial[1]

On the night of November 19, 2005, an assailant shot at Artemo Ramirez as Ramirez stood in the street talking to his father through the open window of his father's van. The bullet missed Ramirez, but hit and killed his father. Ramirez told police that petitioner was the shooter. On the morning of November 20, a detective contacted petitioner's parole officer in an attempt to locate petitioner. To the detective's dismay, the parole officer then called petitioner's sister, who told petitioner that the police wanted to talk to him about a murder investigation.

On the evening of November 20, 2005, Detective Jason Ramos observed a maroon-colored van associated with petitioner. A woman was driving, and another woman and two men were passengers. When the police car activated its lights and siren, the van pulled over. A man later identified as petitioner climbed into the driver's seat from the back of the van, and the van's other occupants all got out. Petitioner sped away, the van fishtailing as if on the verge of losing control. The police car followed the van onto Highway 99, where the van continued at an unsafe speed, failed to yield, failed to signal, and made unsafe lane changes. Petitioner abandoned the van on the highway median and fled on foot. He climbed over the sound wall adjacent to the freeway and escaped.

Lorena Apel, the driver of the van, testified under a grant of immunity that she was driving petitioner, his uncle and his sister when the police stopped the van. When she pulled over and heard the police telling her to remove the keys from the ignition, petitioner jumped into the driver's seat and took control of the van before she could do so. Apel was trying to get out of the van when petitioner "punched" the accelerator, and she fell out as he drove away.

On November 26, 2005, Officer Green joined the high speed chase of a red car. The car was driven by a woman, and petitioner had been identified as the passenger. The car drove onto the freeway, off onto surface streets and back onto the freeway, all at unsafe speed. On surface streets, the car ran several red lights. On the freeway, the car's speed exceeded 80 miles per hour.

---

[1] The transcript of the murder trial is at Lodged Doc. Nos. 15-20 (Reporter's Transcript on Appeal (RT), Vols. I through VI).

2

The pursuit grew to include several police cars and a helicopter. Eventually the car stopped on the median and petitioner got out. He ran across the freeway and was apprehended. A videotape of the pursuit, taken from a helicopter, was played for the jury.

The driver, Christina Aguila, had previously pled guilty to felony evading and testified under a grant of immunity. She and petitioner had driven to Nevada to see the snow, then on toward Indiana. Petitioner had asked her to take him to Indiana, where he had people he wanted to stay with for a while. Aguila did not know that petitioner was wanted by police. About half-way across Illinois, petitioner had an argument on the phone with someone in Indiana and told Aguila to take him back home. They returned to Sacramento from the four day road trip on November 26. Agulia was on the way to drop petitioner off at his cousin's house when she saw police lights behind her. Petitioner told her not to stop. Aguilar drove so fast going onto Highway 99 that the car almost flipped. As the pursuit intensified, Aguila yelled to petitioner over the sirens, police loudspeaker, and the sound of the helicopter, demanding to know what was going on. Petitioner pleaded with her not to stop the car.

Petitioner testified in his own defense and denied involvement in the murder. He admitted that he decided to leave town when he learned the police were looking for him. When the van was pulled over on November 20, he took off because his uncle told him to and because he wanted to get away. On November 26, he told Aguila to keep going because he was afraid the officers would shoot him. When the pursuit began and he heard sirens, he begged her not to pull over. Petitioner admitted that they ran red lights and almost hit a truck while speeding on surface streets. When Aguila finally pulled over onto the freeway median, petitioner ran.

Evidence Presented At The Evading Trial[2]

Detective Ramos and Lorena Apel testified as they had previously about the November 20 pursuit. Ramos's partner, Detective Trzcinski, also testified about stopping the maroon van. He saw petitioner pop up from the back when the van stopped, holding a handgun. It looked as though petitioner was pushing the driver out of the van as he climbed into the driver's seat.

---

[2] The transcript of the evading trial is at Lodged Doc. Nos. 20-25 (Reporter's Transcript on Appeal (RT), Vols. VI at 1664 through XI).

Richard Bahmiller, petitioner's uncle and Apel's boyfriend, testified under a grant of immunity that he was a passenger in Apel's van on November 20, 2005. When the police pulled them over, he jumped out along with his niece and Apel, and petitioner drove away. Bahmiller denied telling police that petitioner had forced Apel out of the van. Petitioner's sister, Consepcion Chitica, testified under a grant of immunity that when the police were pulling over the van, petitioner said "Push it." Bahmiller told Apel to stop, and petitioner told her to go. When they stopped, everyone but petitioner got out of the van before it drove away from the police.

Christina Aguila testified about the November 26 pursuit.[3] As she did at the first trial, Aguila testified that she drove so fast the car almost tipped over rounding the curve of the freeway on-ramp. Both on and off the freeway, she exceeded the speed limit. Petitioner pleaded with her not to stop. Detective Masumoto testified that he had observed petitioner riding in the red car and had initiated the pursuit. He and Officer Green described chasing Aguila's car, which went up to 90 miles an hour on Highway 99 and was forcing other cars off the road with unsafe lane changes. On surface streets the car ran several red lights while exceeding 60 miles per hour. The videotape of the pursuit was played for the jury.

Petitioner's testimony from the first trial regarding the two pursuits was read to the jury.

The jury found petitioner guilty of both counts of evading.[4] The jury found that petitioner had suffered two prior convictions for serious felonies within the meaning of California's Three Strikes Law. Petitioner was accordingly sentenced to twenty-five years to life on each count, for a total aggregate term of fifty years to life in prison.

Post-conviction Proceedings

Petitioner timely appealed, and the California Court of Appeal affirmed the judgment in a partially published opinion on August 5, 2010. See Lodged Doc. No. 6.[5] Petitioner's timely petition for review was denied by the California Supreme Court on November 17, 2010. Lodged

---

[3] She did not testify at this trial about the out-of-state road trip that preceded the pursuit.
[4] Petitioner had also been charged with carjacking in relation to the November 20 incident. The jury was unable to reach a verdict on that count.
[5] Respondent's Lodged Doc. No. 6 consists of the published version of the opinion, which omits Part III of the discussion. Part III addresses only the calculation of pre-sentence credits, which is not at issue in this habeas case. See Appendix to Petition for Review, Lodged Doc. 5.

Doc. 6. Petitioner filed no applications for collateral relief in the state courts.

The pro se federal habeas petition was filed on November 11, 2011. ECF No. 1. Respondent answered on April 2, 2012, and petitioner filed a traverse on August 27, 2012. ECF Nos. 16, 20.

## STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but circuit law has persuasive value regarding what law is "clearly established" and what constitutes "unreasonable application" of that law. Duchaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000); Robinson v. Ignacio, 360 F.3d 1044, 1057 (9th Cir. 2004).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003). Where the state court does not explicitly discuss the federal issue, the question remains whether the denial of relief is objectively

5

1  unreasonable. Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

2  Review under § 2254(d) is limited to the record that was before the state court. Cullen v.
3  Pinholster, 131 S. Ct. 1388, 1398 (2011). The question at this stage is whether the state court
4  reasonably applied clearly established federal law to the facts before it. Id. In other words, the
5  focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 1399. Where the
6  state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the
7  state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th
8  Cir. 2008) (en banc).

9  ## DISCUSSION

10  I.   Claim One:  Double Jeopardy and Right Against Self-Incrimination
11       A.  Petitioner's Allegations

12  Petitioner claims that his rights were violated by his trial for evading after his acquittal in
13  the murder case, because the facts related to the evading charges were known to authorities at the
14  time of the murder case and were presented to prove the murder charge. In the appellate briefing
15  submitted in support of his habeas petition, petitioner argues primarily that the evading charges
16  were barred by Cal. Penal Code § 654 as interpreted by Kellett v. Superior Court, 63 Cal. 2d 822
17  (1966). He also contends that the second trial violated principles of double jeopardy and due
18  process, and that the failure to join the evading charges in the first prosecution lulled him into
19  waiving his Fifth Amendment rights against self-incrimination.

20       B.  The Clearly Established Federal Law
21         1. *State Law Errors*

22  Errors of state law are not cognizable in a federal habeas action. Estelle v. McGuire, 502
23  U.S. 62, 67-68 (1991) ("[W]e have repeatedly held that 'it is not the province of a federal habeas
24  court to reexamine state-court determinations on state-law questions.'"); Lewis v. Jeffers, 497
25  U.S. 764, 780 (1990) (federal habeas corpus relief does not lie for errors of state law). This court
26  is bound by the state court's interpretation of California law. See Bradshaw v. Richey, 546 U.S.
27  74, 76 (2005). This court may consider a claim that application of state law has violated due
28  process by rendering the trial fundamentally unfair. Pulley v. Harris, 465 U.S. 37, 41 (1984);

6

Donnelly v. DeChristophoro, 416 U.S. 637, 642, 643 (1974) (review of state law error limited to whether the error "so infected the trial with unfairness as to make the resulting conviction a denial of due process."). However, "a mere error of state law . . . is not a denial of due process." Rivera v. Illinois, 556 U.S. 148, 158 (2009) (quoting Engle v. Isaac, 456 U.S. 107, 121, n. 21 (1982)).

2. *Double Jeopardy*

The common law principle of collateral estoppel provides that when an issue of ultimate fact has been once determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. Ashe v. Swenson, 397 U.S. 436, 443 (1970). The Double Jeopardy Clause of the Fifth Amendment, as applied to the states by the Fourteenth Amendment, prohibits re-prosecution following acquittal. Benton v. Maryland, 395 U.S. 784 (1969). Because the constitution thus provides that a defendant may not be forced to "run the gantlet" a second time, the guarantee against double jeopardy incorporates the principle of collateral estoppel. Ashe, 397 U.S. at 445-446 (quoting Green v. United States, 355 U.S. 184, 190 (1957)). The bar to relitigation applies only to issues that were actually decided in the first proceeding. Dowling v. United States, 493 U.S. 342, 350-351 (1990). The court must examine the entire record of the past proceeding and determine whether a rational juror could have grounded its verdict upon an issue other than the one which the defendant seeks to foreclose. Ashe, 397 U.S. at 444.

3. *Self-Incrimination*

The Fifth Amendment provides that a criminal defendant may not be compelled to be a witness against himself. Coercion is the touchstone of a violation of the privilege against self-incrimination. United States v. Washington, 431 U.S. 181, 187 (1977) ("Absent some officially coerced self-accusation, the Fifth Amendment privilege is not violated by even the most damning admissions.") "A defendant who chooses to testify waives his privilege against compulsory self-incrimination with respect to the testimony he gives, and that waiver is no less effective or complete because the defendant may have been motivated to take the witness stand in the first place only by reason of the strength of the lawful evidence adduced against him." Harrison v. United States, 392 U.S. 219, 222 (1968). However, if a defendant is effectively compelled to

testify in order to rebut an inadmissible confession that has been erroneously introduced against him at trial, the testimony may not be used on retrial following reversal. Id. at 223-25.

### C. The State Court's Ruling

Because the California Supreme Court denied discretionary review, the opinion of the California Court of Appeal constitutes the last reasoned decision on the merits and is the subject of habeas review in this court. See Ylst v. Nunnemaker, 501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).

#### 1. State Law

The appellate court ruled that Cal. Penal Code § 654 did not bar petitioner's prosecution for evading. The statute bars both multiple punishments and multiple prosecutions for the same act. The California Supreme Court has interpreted the multiple prosecution prong of § 654 in combination with state joinder rules to require the joint prosecution of all offenses "in which the same act or course of conduct plays a significant part," and to bar the subsequent prosecution of any offense not so joined if the initial prosecution results in a verdict. Kellett v. Superior Court, 63 Cal. 2d 822, 827 (1966). The California Court of Appeal held that Kellet did not bar petitioner's prosecution for evading, because the evidence required to prove evading was distinct from the evidence required to prove murder. Lodged Doc. 4 at 7-13.

#### 2. Double Jeopardy

The Court of Appeal did not discuss petitioner's claim that the alleged violation of Cal. Penal Code § 654 also violated the Double Jeopardy Clause. Lodged Doc. No. 4.

#### 3. Self-Incrimination

In the course of analyzing the Cal. Penal Code § 654 issue, the appellate court stated in relevant part as follows:

> Part of the recycled evidence in the evading trial was defendant's testimony in the murder trial about the pursuits, which was read to the jury in the second trial. Defendant argues he was lulled into waiving his Fifth Amendment right against self-incrimination because the People failed to charge felony evading even though the facts of those offenses were fully known and Aguila had been charged and convicted for the November 26 incident.
>
> It is a general rule of evidence that a defendant's testimony at a

> former trial may be used against him at a subsequent trial. (*See Harrison v. United States* (1968) 392 U.S. 219, 222 [20 L.Ed.2d 1047, 1051, 88 S. Ct. 2008].) Further, the content of defendant's testimony can be used as the basis for a new prosecution. (*U.S. v. Baker* (9th Cir. 1988) 850 F.2d 1365, 1370 [permitting government to obtain superseding indictment based on defendant's testimony at trial which ended in mistrial did not violate defendant's privilege against self-incrimination].) Thus, defendant had no reasonable basis to believe he was immunizing himself from prosecution for other criminal acts simply by testifying at his murder trial. We reject the notion that defendant chose to testify and admit the evading only because he believed the People had decided to forgo prosecution on those crimes. Rather, since the evidence of the evading was overwhelming, defendant's decision to admit the evading was a reasonable tactical decision designed to bolster his credibility before the jury so he could convince the jury the identification of him as the shooter was flawed. The People's ability to use defendant's testimony against him at a later trial certainly burdened his decision to testify. Not every burden on a defendant's decision to testify, however, is impermissible. (*Ibid.*)

Lodged Doc. No. 4 at 12.

### D. Review Under § 2254(d)

#### 1. *State Law*

The state court's application of Cal. Penal Code § 654 and Kellett v. Superior Court, supra, is not reviewable in this federal habeas proceeding. See Lewis v. Jeffers, 497 U.S. at 780 (errors of state law do not support federal habeas relief). The Ninth Circuit has specifically held that habeas relief is unavailable for an alleged violation of Cal. Penal Code § 654. Watts v. Bonneville, 879 F.2d 685, 687 (9th Cir. 1989).

#### 2. *Double Jeopardy*

Because no state court issued a reasoned decision addressing the merits of petitioner's Double Jeopardy theory, this court asks whether the denial of relief is objectively unreasonable. Harrington v. Richter, 131 S. Ct. at 786. The Double Jeopardy Clause bars relitigation of the facts underlying the evading charges only if those facts were necessary to the verdict in the murder case. See Ashe, 397 U.S. at 444 (question is whether a rational juror could have grounded its verdict upon an issue other than the one which the defendant seeks to foreclose); Dowling, 493 U.S. at 350 (issue foreclosed only if actually decided in previous proceeding). For the reasons which follow, it is not objectively unreasonable to conclude that petitioner's acquittal of the

9

murder charges could have been grounded upon an issue other than evading.

At the first trial, the jury was instructed that it must find the elements of murder, attempted murder, and felon in possession beyond a reasonable doubt. The jury was also instructed as follows:

> If the Defendant fled immediately after the crime was committed or after he was accused of committing the crime, that conduct may show that he was aware of his guilt. If you conclude that the Defendant fled, it is up to you to decide the meaning and importance of that conduct. However, evidence that the Defendant fled cannot prove guilt by itself.

Lodged Doc. No. 20 (6 RT) at 1510. The jury was not legally nor logically required to reach the question of flight.

At the murder trial, Artemo Ramirez was the only witness who positively identified petitioner as the shooter.[6] If the jury doubted Ramirez's testimony in this regard it could have acquitted petitioner without any consideration of the evading evidence. The defense pointed out numerous inconsistencies between Ramirez's testimony about the shooting and his prior statements to police, and between Ramirez's version of events and the observations of various neighbors. The defense contended that Ramirez was lying, and urged the jury not to find him credible. Because the verdicts of acquittal could have been based on factual determinations entirely unrelated to the evidence of flight, including Ramirez's credibility and/or the overall sufficiency of evidence regarding the identity of the shooter, constitutional principles of collateral estoppel do not apply.

At the evading trial, the jury was instructed as follows:

> The Defendant is charged in Counts 2 and 3 with evading a peace officer with wanton disregard for safety. To prove that the

---

[6] Several neighbors heard gunshots and/or saw some part of the events. There was conflicting testimony regarding two distinct shootings within a period of 10 to 30 minutes, the role of an African-American man with an assault rifle, and an exchange of gunfire among multiple individuals adjacent to the senior Mr. Ramirez's van. The defense highlighted the inconsistencies in the neighbors' testimony, and other witness memory and credibility problems, in arguing reasonable doubt.

10

> Defendant is guilty of this crime the People must prove that, one, a peace officer driving a motor vehicle was pursuing the Defendant; two, the Defendant who was also driving a motor vehicle willfully fled from or tried to elude the officer intending to evade the officer; three, during the pursuit the Defendant drove with willful or wanton disregard for the safety of persons or property; and four, all of the following were true: A, there was at least one lighted red lamp visible from the front of the peace officer's vehicle; B, the Defendant either saw or reasonably should have seen the lamp; C, the peace officer's vehicle was sounding a siren as reasonably necessary; D, the peace officer's vehicle was distinctively marked, and E, the peace officer was wearing a distinctive uniform.

Lodged Doc. No. 20 (6 RT) at 2899-2900.  None of these facts was necessary to the jury verdicts at the murder trial, which turned on the question whether petitioner's identity as the shooter had been proved beyond a reasonable doubt.

As the appellate court explained in discussion of the related state law question,

> It is true the People relied on the evidence of the felony evading to prove the murder charge. . . . [However], the evidence needed to prove murder—that defendant was the shooter—did not supply proof of evading. Evidence of the evading showed at most a consciousness of guilt as to the murder; as the acquittal shows, it was insufficient to supply proof of the murder. There was little evidentiary overlap between the murder and the evading offenses; the People simply used the evidence of evading to show consciousness of guilt. . .

Lodged Doc. No. 4 at 11.

The Double Jeopardy Clause does not bar all uses of evidence introduced in a prior trial that resulted in acquittal.  For example, the Supreme Court has approved the use of acquitted conduct evidence as prior acts evidence pursuant to Fed. Rule Evid. 403(b).  Dowling, 493 U.S. at 343-344.  Here as in Dowling, "the prior acquittal did not determine an ultimate issue in the present case." 493 U.S. at 348.  Here as in Dowling, the two trials involved different charges arising from distinct events, and the common evidence was introduced for different purposes and subject to different standards of proof at the two trials.  Accordingly, clearly established federal law does not support petitioner's claim.  Having carefully reviewed the transcripts of both trials as required by Ashe, supra, the undersigned concludes that the evading charges were not foreclosed by the murder trial and that the state courts reasonably rejected petitioner's Double Jeopardy claim.

11

    *3. Self-Incrimination*

The state appellate court correctly identified the governing U.S. Supreme Court precedent, Harrison v. United States, supra, and applied it reasonably. Harrison recognized "the general evidentiary rule that a defendant's testimony at a former trial is admissible in evidence against him in later proceedings." 392 U.S. at 222. The Harrison Court carved out a limited exception for testimony that is effectively compelled by the need to rebut an illegally obtained and erroneously admitted confession. Harrison, 392 U.S. at 223-25. No clearly established federal law extends Harrison to testimony that is presented to rebut evidence other than an illegally-obtained confession.[7] The Ninth Circuit has refused to extend Harrison beyond its facts. See United States v. Baker, 850 F.2d 1365, 1370 (1988). Accordingly, the state appellate court's rejection of petitioner's self-incrimination claim cannot have been objectively unreasonable within the meaning of the AEDPA.

Petitioner claims that he was "lulled" into believing that he was immune from prosecution for evasion. "Lulling" does not amount to coercion, without which there is no violation of the Fifth Amendment. See United States v. Washington, 431 U.S. at 187. There is no indication of coercion here. It is certainly true that petitioner faced a difficult decision whether to testify, in order to persuade the jury that his evading behavior was the result of fear rather that consciousness of guilt, or to remain silent in order not to incriminate himself with regard to evasion. "A defendant who chooses to testify waives his privilege against compulsory self-incrimination with respect to the testimony he gives, and that waiver is no less effective or complete because the defendant may have been motivated to take the witness stand in the first place only by reason of the strength of the lawful evidence adduced against him." Harrison, 392 U.S. at 222. It is of no constitutional significance that petitioner may have wrongly believed that the state had determined not to prosecute him for evading. The Supreme Court "has never embraced the theory that a defendant's ignorance of the full consequences of his decisions vitiates

---

[7] The Harrison Court reasoned that where improper use of an extrajudicial confession impels a testimonial statement, the testimony is tainted by the same illegality that rendered the confession inadmissible. 392 U.S. at 223. The familiar "fruit of the poisoned tree" doctrine has no application outside the context of illegally obtained evidence. See id. at n.9.

12

1  their voluntariness." Oregon v. Elstad, 470 U.S. 298, 316 (1985).

2  The state court's analysis reflects no unreasonable application of clearly established
3  federal law.  Without U.S. Supreme Court precedent barring the use of prior testimony under
4  circumstances similar to those of this case, petitioner cannot prevail under AEDPA standards.  To
5  the extent the state court made any factual determinations – such as its conclusion that petitioner
6  made a tactical decision to testify at the first trial – those determinations were not objectively
7  unreasonable in light of the appellate record.  For these reasons, § 2254(d) precludes relief on this
8  claim.

9  II.   Claim Two: Vindictive Prosecution

10  A.   Petitioner's Allegations

11  Petitioner contends that he was prosecuted for evasion in retaliation for his acquittal at the
12  murder trial and/or his exercise of the right to testify in his own defense at that trial.

13  B.   The Clearly Established Federal Law

14  The government violates a defendant's right to due process if it files criminal charges to
15  penalize him for the exercise of a protected statutory or constitutional right.  United States v.
16  Goodwin, 457 U.S. 368, 372 (1982).  This rule follows from the principle that "[t]o punish a
17  person because he has done what the law plainly allows him to do is a due process violation 'of
18  the most basic sort.'"  Id. (quoting Bordenkircher v. Hayes, 434 U.S. 357, 363)).  A presumption
19  of vindictiveness arises, and must be overcome by objective information in the record, where a
20  more severe sentence is imposed upon retrial.  North Carolina v. Pearce, 395 U.S. 711, 726
21  (1969) (retrial following reversal on appeal); Blackledge v. Perry, 417 U.S. 21, 27 (1974) (retrial
22  as a matter of right in a superior trial court).  No presumption of vindictiveness arises where a
23  prosecutor follows through on a threat made during plea negotiations to bring additional charges
24  if a plea offer is rejected, Bordenkircher v. Hayes, 434 U.S. at 363, or where charges are added
25  after a defendant declines to plead guilty and demands a jury trial, Goodwin, 457 U.S. at  384.
26  Where no presumption applies, a defendant may attempt to prove actual vindictiveness through
27  objective evidence of improper prosecutorial motive.  Id. at 380 & n.12, 384; see also Alabama v.
28  Smith, 490 U.S. 794, 799 (1989).

C. <u>The State Court's Ruling</u>

The California Court of Appeal ruled in relevant part as follows:

> The gravamen of a vindictive prosecution is the increase in charges or a new prosecution brought in retaliation for the exercise of constitutional rights. (*North Carolina v. Pearce* (1969) 395 U.S. 711, 723–726 [23 L.Ed.2d 656, 668–670, 89 S. Ct. 2072], overruled on other grounds in *Alabama v. Smith* (1989) 490 U.S. 794 [104 L.Ed.2d 865, 109 S. Ct. 2201].) It is "patently unconstitutional" to "chill the assertion of constitutional rights by penalizing those who choose to exercise them." (*United States v. Jackson* (1968) 390 U.S. 570, 581 [20 L.Ed.2d 138, 147, 88 S. Ct. 1209].)
>
> "Where the defendant shows that the prosecution has increased the charges in apparent response to the defendant's exercise of a procedural right, the defendant has made an initial showing of an appearance of vindictiveness. [Citation.]" (*Twiggs v. Superior Court* (1983) 34 Cal.3d 360, 371 [194 Cal. Rptr. 152, 667 P.2d 1165].) "[O]nce the presumption of vindictiveness is raised the prosecution bears a heavy burden of rebutting the presumption with an explanation that adequately eliminates actual vindictiveness. In this regard, the trial court should consider the prosecutor's explanation in light of the total circumstances of the case in deciding whether the presumption has been rebutted." (Id. at p. 374.)
>
> "[T]he presumption of unconstitutional vindictiveness is a legal presumption which arises when the prosecutor increases the criminal charge against a defendant under circumstances which … are deemed to present a 'reasonable likelihood of vindictiveness.' " (*In re Bower* (1985) 38 Cal.3d 865, 879 [215 Cal. Rptr. 267, 700 P.2d 1269].) "In order to rebut the presumption of vindictiveness, the prosecution must demonstrate that (1) the increase in charge was justified by some objective change in circumstances or in the state of the evidence which legitimately influenced the charging process and (2) that the new information could not reasonably have been discovered at the time the prosecution exercised its discretion to bring the original charge." (*Ibid.*)
>
> Defendant contends this case is analogous to *Jenkins*, *supra*, 504 F.3d 694, in which a presumption of vindictiveness arose after the government filed additional charges against the defendant only after she admitted them while testifying in her defense in another case. The Attorney General responds that *Jenkins* is distinguishable and this case is analogous to *U.S. v. Esposito* (3d Cir. 1992) 968 F.2d 300 (Esposito). . . .
>
> . . . We find this case governed by *Esposito*, not *Jenkins*; defendant has failed to establish a presumption of vindictiveness. The timing of the People's decision to charge defendant with evading indicates it was a response to the acquittal, not to defendant's testifying at trial. In arguing for dismissal, defense counsel claimed the prosecutor announced the subsequent prosecution as the verdicts of acquittal were being read in the murder trial. On appeal, defendant

14

> argues his arrest immediately after acquittal "strongly suggests the People would not have brought the evasion charges had the jury not acquitted him." Defendant points to no evidence suggesting the People were punishing him for testifying in his defense. Numerous courts have held the filing of new charges after an acquittal on separate charges do not, without more, give rise to a presumption of vindictiveness. (*U.S. v. Johnson* (2d Cir. 1999) 171 F.3d 139, 141; *U.S. v. Wall* (10th Cir. 1994) 37 F.3d 1443, 1449; *U.S. v. Rodgers* (8th Cir. 1994) 18 F.3d 1425, 1430–1431; *Esposito, supra*, 968 F.2d at p. 306.)
>
> Moreover, even if we found a presumption of vindictiveness because the decision to file evading charges came after defendant testified, the acquittals would serve as an "objective change in circumstances" "which legitimately influenced the charging process," and which "could not reasonably have been discovered at the time the prosecution exercised its discretion to bring the original charge." (*In re Bower, supra,* 38 Cal.3d at p. 879.) Thus, the presumption would be rebutted. (*Ibid.*)

Lodged Doc. No. 6 at 13-15.

### D. Review Under § 2254(d)

The U.S. Supreme Court has never held that a presumption of vindictiveness arises when new charges are filed after acquittal on separate charges. Lower federal courts have held that such charges are not presumptively vindictive under North Carolina v. Pearce and progeny. See United States v. Esposito, 968 F.2d 300, 306 (3d Cir. 1992); United States v. Johnson, 171 F.3d 139, 141(2d Cir. 1999); United States v. Wall, 37 F.3d 1443, 1449 (10th Cir. 1994); United States v. Rodgers, 18 F.3d 1425, 1430–31 (8th Cir. 1994). This body of authority, on which the state court relied, demonstrates that its result was not an objectively unreasonable application of the governing federal law.

In United States v. Jenkins, 504 F.3d 694 (9th Cir. 2008), the Ninth Circuit held that a presumption of vindictiveness did apply where alien smuggling charges were brought against a defendant only after she exercised her right to testify in her own defense at a separate trial for marijuana smuggling. In that case the defendant was charged immediately she testified and admitted alien smuggling, before the jury returned a verdict on the drug charges. These circumstances created an appearance of vindictiveness because the new charges correlated directly with the defendant's exercise of her right to testify. Jenkins, 504 F.3d at 701. The California court found that petitioner's case was more like United States v. Esposito, supra, in

which cocaine distribution charges were brought after the defendant was acquitted of racketeering and related offenses including drug dealing. The Esposito court found that no presumption of vindictive prosecution arose because the new charges were responsive to the acquittal and not to an exercise of constitutional rights. Esposito, 968 F.2d at 305.

Because petitioner was charged with additional offenses after an acquittal as in Esposito, rather than immediately following his testimony as in Jenkins, the state court's analysis was not unreasonable.[8] The Ninth Circuit has repeatedly held that vindictiveness requires a link between the new charges and the exercise of a protected right. See, e.g., United States v. Robison, 644 F.2d 1270, 1272 (9th Cir. 1981) (and cases cited therein). Here that link is far from apparent. As the state court noted, the timing of the new charges indicates that they were responsive to the acquittal. That conclusion is not objectively unreasonable, and no clearly established federal law supports a vindictive prosecution finding on that basis. Accordingly, § 2254(d) bars relief on this claim.

III.  Claim Three: Ineffective Assistance of Counsel

In the trial court, the prosecutor contended that petitioner had forfeited his vindictive prosecution claim by improperly raising it in a post-trial motion rather than a pre-trial motion. On appeal, petitioner therefore argued in the alternative that trial counsel had provided ineffective assistance, in violation of the Sixth Amendment, by failing to bring a timely motion. See Lodged Doc. No. 1 (Appellant's Opening Brief) at 64. The court of appeal decided the vindictive prosecution claim on the merits and did not address the ineffective assistance of counsel claim. Lodged Doc. No. 4. Accordingly, petitioner did not separately argue the ineffective assistance issue in his petition for review. See Lodged Doc. No. 5 (Petition for Review) at 23 n.9.

The merits of this claim overlap with those of the vindictive prosecution claim. To establish a constitutional violation based on the ineffective assistance of counsel, a petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness,

---

[8] Petitioner's reliance on Jenkins is unavailing for another reason: circuit authority does not constitute "clearly established federal law" for purposes of § 2254(d). Lockyer v. Andrade, 538 U.S. at 71-72.

and (2) that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 692, 694 (1984). Prejudice means that the error actually had an adverse effect on the defense. There must be a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 693-94. On the facts of this case, prejudice would thus require a finding that a timely vindictive prosecution motion would have resulted in dismissal of the evading charges. For the reasons already explained, the circumstances of this case do not support a finding of vindictive prosecution. The state appellate court's decision rejecting the claim on its merits demonstrates that bringing the motion sooner would have made no difference. Because petitioner therefore cannot establish prejudice, the state courts' implicit denial of petitioner's putative Strickland claim cannot have been objectively unreasonable.

## CONCLUSION

For all the reasons explained above, the state court's denial of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d). Accordingly, IT IS RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-eight days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Courts order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 4, 2014

_/s/ Allison Claire_
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE